PETER PARTING, Plaintiff and Counterdefendant-Appellee, v. NALCO CHEMICAL COMPANY, Defendant and Third-Party Plaintiff and Counter-plaintiff-Appellant (Specialist Window Cleaning Service, Inc., Third-Party Defendant).

Second District  No. 83—1108

Opinion filed December 31, 1984.

Stephen A. Rehfeldt, of Wylie, Wheaton & Associates, P.C., of Wheaton, for appellant.

Christopher W. Bohlen, of Blanke, Norden, Barmann & Bohlen, P.C., of Kankakee, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Nalco Chemical Company appeals from the trial court's dismissal of its counterclaim against Peter Parting in which it sought to pierce the corporate veil of Specialist Window Cleaning Service, Inc., and impose individual liability on Parting, president of Specialist. The sole issue on review is whether the trial court erred in dismissing Nalco's counterclaim against Parting on the ground that the issues raised by the counterclaim should have been raised in Specialist's bankruptcy proceedings.

Peter Parting filed a two-count complaint against Nalco Chemical Company (Nalco), alleging that as an employee of Specialist Window Cleaning Service, Inc. (Specialist), he was engaged in window washing on Nalco's premises, and that while standing on a plank which was on scaffolds erected by Nalco, one of the scaffolds collapsed and Parting

was thrown from the plank and sustained serious injuries. Count I alleged violations of the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*), and count II was founded on common law negligence.

After filing an answer in which Nalco denied responsibility for the equipment and scaffolding, Nalco filed a third-party complaint against Specialist on July 6, 1982, alleging that there was an indemnification clause in the contract between Nalco and Specialist in which Specialist expressly agreed to indemnify Nalco for the exact claims and demands sought by Parting against Nalco. The contract was attached to the third-party complaint, and was signed by Parting on behalf of Specialist.

On August 2, 1982, Specialist filed a voluntary debtor's petition in bankruptcy court that was signed by Parting as president of Specialist. On August 4, 1982, Specialist filed an answer to the third-party complaint, admitting the existence of the indemnification clause but denying that Nalco was entitled to indemnification, stating that Specialist filed its voluntary petition in bankruptcy listing Nalco as a contingent creditor, and contending that Specialist was absolved from liability pursuant to the Federal Bankruptcy Act.

On July 11, 1983, Nalco filed a counterclaim against Parting, alleging that Parting, as shareholder and president of Specialist, had negotiated the contract and executed it on behalf of Specialist; that pursuant to the contract, Specialist agreed to indemnify and hold Nalco harmless from all claims arising out of bodily injury incurred as a result of the performance of window cleaning services; that a bankruptcy petition was voluntarily filed on behalf of Specialist on August 2, 1982; that at all relevant times, Parting exercised ownership control over Specialist such that there was unity of ownership and interest in that the separate personalities of the corporation and the individual no longer existed, as evidenced by Parting's failure to maintain adequate corporate books and financial requirements in compliance with statutory corporate formalities, by his commingling of the corporate funds and assets with his personal funds and assets, and by disbursing corporate funds to pay for Parting's personal expenses; and that adherence to the fiction of separate corporate existence would sanction a fraud and promote injustice.

Parting filed a motion to strike the counterclaim pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), stating that Specialist voluntarily filed a bankruptcy petition; that Nalco was listed as a creditor in the bankruptcy petition and was given notice of the petition; that Nalco had an opportunity to be heard at the first meeting of creditors but chose not to appear and

never objected to the bankruptcy petition; that at no time during the bankruptcy proceeding did Nalco claim that Specialist was a "sham" corporation or assert that the bankruptcy petition was unfair or unjust; and that given that Nalco failed to object after being properly notified and given an opportunity to be heard, the preservation of the separate corporate existence of Specialist became necessary to prevent injustice. The affidavit of the bankruptcy trustee, corroborating the statements in the motion as to Nalco's nonparticipation in the bankruptcy proceedings, was attached.

In a written memorandum and during oral argument at the hearing on the motion to strike the counterclaim, Parting contended that the bankruptcy court, by virtue of 11 U.S.C. sec. 523 (Supp. 1978), had exclusive jurisdiction to determine the dischargeability of the debt in question. By Nalco's failure to appear, object, or litigate the issue in the bankruptcy proceedings, the issue was not properly before the trial court. Parting further argued that the determination of whether he had violated a fiduciary duty should have been made in bankruptcy court so that the benefit could inure to all the creditors and not merely Nalco.

Nalco responded by stating that while bankruptcy courts had exclusive jurisdiction to resolve issues arising under 11 U.S.C. sec. 523 (Supp. 1978), jurisdiction extends to the individual debtor before the bankruptcy court, which was Specialist, not Parting. Nalco added that the bankruptcy court decides whether there are enough assets to satisfy liabilities, not whether shareholders are liable to any individuals.

At the hearing on Parting's motion to strike the counterclaim, the trial court asked what orders were entered in the bankruptcy proceeding, and Parting answered that the petition was heard and there was a meeting of creditors and that there is no absolute discharge for a corporation because it is assumed that the corporation will dissolve, which occurred here.

The trial court granted the motion to strike pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619), stating that as a result of the failure of Nalco to participate in the bankruptcy proceedings involving Specialist, when Parting appeared as an officer of the corporation, those issues were decided by the bankruptcy court; that notice having been given, issues involving piercing of the corporate veil or any debts of the corporation which may have also been the debts of Parting as a result of any malfeasance or unlawful conduct on his part should have been brought to the attention of the bankruptcy court; and that since the opportunity was not taken, there should be a bar to pursuing any relief as to ob-

taining monies from Parting.

Both parties relied below on section 523 of the Bankruptcy Code (11 U.S.C. sec. 523 (Supp. 1978)) as the controlling provision in the determination of whether the bankruptcy court had exclusive jurisdiction to decide the issue of piercing the corporate veil. However, our review of section 523 discloses that it is not jurisdictional, but rather merely delineates the types of debts that are not discharged under an order of discharge. Because corporations that file voluntary petitions for bankruptcy under chapter 7 of the Bankruptcy Code, as Specialist did, never receive an order of discharge (see 11 U.S.C. sec. 727(a)(1) (Supp. 1978); 4 Collier on Bankruptcy par. 727.01, at 727 (15th ed. 1983)), section 523 has no application to the facts before us.

Congress conferred jurisdiction on the bankruptcy courts when it enacted 28 U.S.C. sec. 1471 (Supp. 1978), which provides:

"(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case."

Our reading of this statute leads us to conclude that section 1471(b), in conjunction with section 1471(c), vests bankruptcy courts with original but not exclusive jurisdiction of civil proceedings "related to cases under title 11." Thus, for the bankruptcy court to have had any jurisdiction to consider this matter, the issue of piercing the corporate veil of Specialist must be "related to" Specialist's bankruptcy proceedings.

Nalco argues that its attempt to impose individual liability on Parting for Specialist's debts is unrelated to Specialist's bankruptcy proceedings since Parting was not before the bankruptcy court as an individual debtor but only as an officer of Specialist. No clear test for determining whether a suit is "related to" a title 11 case has yet arisen. (*Steyhr Daimler Puch of America Corp. v. Pappas* (E.D. Va. 1983), 35 Bankr. 1001, 1005.) One commentator has suggested that "[t]he criterion to be adopted in such a situation will undoubtedly be related to a determination of whether the outcome of the proceeding could conceivably have any effect upon the estate being administered." 1 Collier on Bankruptcy par. 3.01, at 3—49 (15th ed. 1983).

Using this analysis, a cogent argument can be made that the outcome of the present controversy will have an effect on the administration of Specialist's estate because, if Parting is declared the alter ego of Specialist, the interest of Parting, Specialist, and all of Specialist's creditors, including Nalco, will be affected. (See *Steyhr Daimler Puch of America Corp. v. Pappas* (E.D. Va. 1983), 35 Bankr. 1001, 1005.) Furthermore, in emphasizing the short period of time between Nalco's filing of the third-party complaint and Specialist's commencing of bankruptcy proceedings, Nalco has implied that Parting, on behalf of Specialist, filed the voluntary petition in bankruptcy in an attempt to avoid potential liability under Nalco's third-party complaint, and has thus conceded a connection between the two actions.

Therefore, under the facts here and for the purposes of this appeal, we will assume that an attempt to pierce the corporate veil of a bankruptcy petition is "related to" a suit under title 11. In support of our conclusion, we note that bankruptcy courts, pursuant to their general equitable powers, have entertained attempts to pierce corporate veils by consolidating the assets and liabilities of an individual and an affiliated corporation. See 5 Collier on Bankruptcy par. 1100.06, at 1100-32 through 1100-34 (15th ed. 1983); *In re Continental Vending Machine Corp.* (2d Cir. 1975), 517 F.2d 997, 1000.

Assuming that the bankruptcy court was vested with nonexclusive jurisdiction to hear and rule on the issue of piercing the corporate veil, we still must decide whether Nalco, as argued by Parting and determined by the court below, was required to pursue this claim in that forum so that, by declining to litigate in the bankruptcy court, Nalco waived the right to raise this claim in the circuit court. We hold that, under the facts here, Nalco should have been permitted to raise, in its counterclaim, the issue of piercing the corporation veil of Specialist. We know of no authority requiring Nalco, under the circumstances here, to litigate the issue raised here in the bankruptcy proceeding

filed prior to the counterclaim filed in another court, where both have jurisdiction. To hold otherwise would implicitly vest bankruptcy courts with exclusive jurisdiction in these matters unless the bankruptcy court decided to abstain under 28 U.S.C. sec. 1471(d) (Supp. 1978). Furthermore, a stronger argument can be made for the proposition that where creditors actually participate in the bankruptcy proceedings of the debtor corporation but fail to raise the issue of a "sham" corporation in those proceedings, those creditors should be barred from attempting to pierce the corporate veil of the debtor at a later date and in a second, different forum. Yet, under those circumstances, the later challenge to the debtor corporation has been allowed by the second forum. See *Steyhr Daimler Puch of America Corp. v. Pappas* (E.D. Va. 1983), 35 Bankr. 1001; *B. Kreisman & Co. v. First Arlington National Bank* (1980), 91 Ill. App. 3d 847, 415 N.E.2d 1070.

While Parting claims that should Specialist's corporate veil be pierced, all of the creditors should benefit but only Nalco will be before the trial court, the outcome of this litigation and its effects on all involved are speculative at this point, and our holding does not prejudice other creditors. Their interests may be protected, for example, by the joining of the chapter 7 trustee as a necessary party. (See *Steyhr Daimler Puch of America Corp. v. Pappas* (E.D. Va. 1983), 35 Bankr. 1001.) Under the facts here, Nalco's failure to attempt to pierce the corporate veil in bankruptcy court, assuming it could do so, will not operate as a waiver of its right to make that claim in this State court proceeding against Parting, nor is Parting prejudiced in any way.

We note in closing that in its reply brief, Nalco also argues that the bankruptcy court was without jurisdiction since the bankruptcy petition was filed after the decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* (1982), 458 U.S. 50, 73 L. Ed. 2d 598, 102 S. Ct. 2858, which found the broad grant of jurisdiction to the bankruptcy courts contained in 28 U.S.C. sec. 1471 (1978) unconstitutional. This issue was not raised below (see *Carillo v. Jam Productions, Ltd.* (1983), 97 Ill. 2d 371, 377, 454 N.E.2d 649) and was not raised or argued in Nalco's initial brief (*Batteast v. Argonaut Insurance Co.* (1983), 118 Ill. App. 3d 4, 6, 454 N.E.2d 706; *Will v. Will Products, Inc.* (1982), 109 Ill. App. 3d 778, 785, 441 N.E.2d 343), and thus is deemed waived. Also, as this matter was brought prior to the recent changes in the bankruptcy laws, we express no opinion as to whether the bankruptcy courts continue to have nonexclusive jurisdiction and thus remain available to future litigants who seek to pierce the corporate veil of a debtor corporation in that forum.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

NASH, P.J., and HOPF, J., concur.